The **COMMITTEE FOR NUCLEAR RESPONSIBILITY, INC.**, et al., Appellants,

v.

Glenn T. **SEABORG** et al.

No. 71–1732.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 22, 1971.

Decided Oct. 5, 1971.

As Amended Nov. 2, 1971.

For opinion on appeal after remand, see, D.C.Cir., 463 F.2d 788.

Mr. David Sive, New York City, a member of the bar of the Supreme Court of New York, pro hac vice, by special leave of court, with whom Mr. Harold P. Green, Washington, D. C., was on the brief, for appellants.

Mr. Edmund B. Clark, Atty., Department of Justice, with whom Messrs. Shiro Kashiwa, Asst. Atty. Gen., and Thomas L. McKevitt, Atty., Department of Justice, were on the brief, for appellees.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

PER CURIAM:

Plaintiffs seek to enjoin an underground nuclear test, code-named Cannikin, to be conducted by the defendant Atomic Energy Commission (A.E.C.). The district court granted summary judgment for defendants, and plaintiffs appealed.[1] The case came on for consideration of plaintiffs' motion for a stay pending appeal and expedited consideration of the appeal. The parties stipulated at the time of oral argument that since briefs on the merits had already been submitted by both parties, the case should be heard on the merits. Accordingly, we consider in this opinion the substantive questions presented. We reverse, and remand the case to the district court for continued proceedings consistent with this opinion.

1. For purposes of this opinion we refer to appellants in this court as "plaintiffs" and appellees as "defendants."

## I

The A.E.C. is completing plans for an underground test of a nuclear warhead on Amchitka Island, Alaska.[2] As required by the National Environmental Policy Act (NEPA), 42 U.S.C. 4331 et seq. (1970), the Commission issued an impact statement evaluating the environmental effects of the test. Plaintiffs, seven conservation groups, seek to enjoin the test primarily on the grounds that the impact statement did not satisfy NEPA's requirements.[3]

Plaintiffs commenced discovery proceedings in an effort to establish the deficiency of the impact statement's treatment of potential dangers of the test. Defendants moved for dismissal of the complaint or in the alternative for summary judgment, and all discovery was stayed pending the outcome of the motion to dismiss. Immediately at the conclusion of the argument on the motion, the district court denied the motion to dismiss but granted summary judgment for defendants. This appeal followed.

## II

The district court specifically upheld the sufficiency of the motion to dismiss. The court did not articulate its reasons for granting summary judgment, but from the record in the case, including the expedition with which the motion for summary judgment was granted, we conclude that the district court accepted the validity of the contention that was most strongly pressed by the Government: that Congress's passage of authorization and appropriations bills for the test represented a conclusive determination of the sufficiency of the impact statement. This contention was, in our view, erroneous, and in order to avoid the continuance of an order that was predicated on an impermissible basis, the judgment of the District Court must be reversed. See Delaware and Hudson Ry. Co. v. United Transportation Union, 1971, 146 U.S.App.D.C. 142, 450 F.2d 603.

Congress could, of course, withdraw the question of the statement's compliance from the courts by repealing NEPA as it applied to the Cannikin test. But it is well settled that repeal by implication is disfavored, and the doctrine applies with full vigor when, as here, the subsequent legislation is an appropriations measure,[4] and when the prior Act is to continue in its general applicability, as construed by the courts, but the claim is made that it is to be subject to a particularized legislative exception.[5] Congress must be free to provide authorizations and appropriations for projects proposed by the executive even though claims of illegality on grounds of noncompliance with NEPA are pending in the courts. There is, of course, nothing inconsistent with adoption of appropriations and authorizations measures on the *pro tanto* assumption of validity, while leaving any claim of invalidity to be determined by the courts.[6] That is the effect of the authorization and appropriations measures relating to the Cannikin test. This conclusion is established by the general principles just discussed. Nothing in the legislative history leads to a

---

2. The test was originally scheduled for October, 1971. Congress has provided that it may not take place unless the President gives his direct approval. Pub. L. No. 92–134, 85 Stat. 365 (1971).

3. Appellants also rested their claim for injunctive relief on three other grounds, asserted violations of:
 (1) The Nuclear Test Ban Treaty,
 (2) Various statutes designed to protect wildlife, and
 (3) The rights under the Fifth and Ninth Amendments of citizens endangered by Cannikin.

4. *See, e. g.,* United States v. Langston, 118 U.S. 389, 6 S.Ct. 1185, 30 L.Ed. 164 (1886).

5. *Cf.,* D. C. Federation Civic Assns. v. Volpe, 140 U.S.App.D.C. 162, 434 F.2d 436, 444–447 (1970).

6. That was precisely the conclusion as to the intent of Congress reached in another NEPA case by the court in Environmental Defense Fund, Inc. v. Corps of Engineers, 325 F.Supp. 749, 762–763 (E.D.Ark.1971).

different result. On the contrary, there is an affirmative indication that at least some of the Congressmen voting for the authorization and appropriations measures specifically contemplated that the claim of illegality remained for resolution by the courts.[7] The legislative history indicates that while the impact statement was used as reference material by both proponents and opponents of the test, Congress did not purport to make a binding determination on the issue whether the statement was in compliance with NEPA.

7. Thus, Representative Price, in voting for the project, stated concerning the issue of whether the impact statement complied with NEPA: "This matter is before the court. I submit that if there has been any violation of the law, the court will supply the appropriate remedy." 112 Cong.Rec. 6785, July 15, 1971.

8. In view of our disposition of the case, it is not necessary to rule on whether any of plaintiffs' other three grounds for relief state a claim on which relief can be granted. Our order does not foreclose the district court, on remand, from striking any or all of those grounds for failure to state a claim.

9. Rule 56, Fed.R.Civ.Pro., permits summary judgment only when no material issue of fact is in dispute and the moving party is by law entitled to judgment. *See* Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944).

10. NEPA, section 102, 42 U.S.C. § 4332 (1970):
The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—
(A) utilize a systematic, interdisciplinary approach which will insure the integrated use of the natural and social sciences and the environmental design arts in planning and in decisionmaking which may have an impact on man's environment;
(B) identify and develop methods and procedures, in consultation with the Council on Environmental Quality es-

Thus, plaintiffs clearly presented a cognizable claim under NEPA,[8] and summary judgment would be appropriate only if they failed to provide any factual underpinning for their claim.[9]

### III

■ Section 102 of NEPA requires, *inter alia*, that an impact statement assess adverse environmental effects and discuss alternatives to the proposed action.[10] On the ultimate issue whether a project should be undertaken or not, a matter involving the assessment and

tablished by subchapter II of this chapter, which will insure that presently unquantified environmental amenities and values may be given appropriate consideration in decisionmaking along with economic and technical considerations;
(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—
(i) the environmental impact of the proposed action,
(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
(iii) alternatives to the proposed action,
(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, and shall accompany the proposal through the existing agency review processes; * * *

weighing of various factors, the court's function is limited. However, the court has a responsibility to determine whether the agencies involved have fully and in good faith followed the procedure contemplated by Congress: that is, setting forth the environmental factors involved in order that those entrusted with ultimate determination whether to authorize, abandon or modify the project, shall be clearly advised of the environmental factors which they must take into account. See Calvert Cliffs' Coordinating Committee v. United States Atomic Energy Commission, 146 U.S. App.D.C. 33, 449 F.2d 1109 at 1114.

The statement has importance in focusing the environmental factors involved even when the officials ultimately responsible are in, or more likely the head of, the office or agency that prepared the report. The ultimate decision must of course take into account matters other than environmental factors, but insofar as staff has prepared the environmental statement for transmission and consideration throughout the entire executive process, the officials making the ultimate decision, whether within or outside the agency, must be informed of the full range of responsible opinion on the environmental effects in order to make an informed choice. Moreover, the statement has significance in focusing environmental factors for informed appraisal by the President, who has broad concern even when not directly involved in the decisional process, and in any event by Congress and the public.

 When, as here, the issue of procedure relates to the sufficiency of the presentation in the statement, the court is not to rule on the relative merits of competing scientific opinion. Its function is only to assure that the statement sets forth the opposing scientific views, and does not take the arbitrary and impermissible approach of completely omitting from the statement, and hence from the focus that the statement was intended to provide for the deciding officials, any reference whatever to the existence of responsible scientific opinions concerning possible adverse environmental effects.[11] Only *responsible* opposing views need be included and hence there is room for discretion on the part of the officials preparing the statement; but there is no room for an assumption that their determination is conclusive. The agency need not set forth at full length views with which it disagrees, all that is required is a meaningful reference that identifies the problem at hand for the responsible official. The agency, of course, is not foreclosed from noting in the statement that it accepts certain contentions or rejects others.[12]

By means of discovery and the introduction of the affidavit of a scientific expert, plaintiffs attempted to prove that the requirement of the law was not met "fully and in good faith" by the A.E.C. The district court's grant of summary judgment erroneously foreclosed this line of inquiry to plaintiffs.

 Summary judgment is only appropriate when there is no bona fide material issue, and Rule 56 clearly contemplates that the parties shall have opportunity for deposition in order to establish the existence of a material issue.[13] Here, plaintiffs sought to establish that there was responsible scien-

11. *Compare* Environmental Defense Fund, Inc. v. Corps of Engineers, 325 F.Supp. 749, 759 (E.D.Ark.1971).

12. *Compare* Environmental Defense Fund, Inc. v. Corps of Engineers, 325 F.Supp. 749, 759 (E.D.Ark.1971).

13. *Cf.* Rule 56(f), Fed.R.Civ.Pro., Berne Street Enterprises, Inc. v. American Export Isbrandtsen Co., Inc., 298 F.Supp. 195 (S.D.N.Y.1968), 6 Moore's Federal Practice, § 56.24.

tific opinion as to possible adverse environmental consequences, a fact that would be material in support of their legal claim that omission of all reference to such scientific opinion was contrary to the process prescribed by NEPA.[14]

 Plaintiffs also alleged the existence of reports by federal agencies recommending against Cannikin specifically because of potential harm to the environment. NEPA clearly indicates that the agency responsible for a project should obtain and release such adverse reports.[15] If these reports exist, and they are not subject to some statutory exemption, plaintiffs must prevail on this contention as well.[16] Plaintiffs attempted, through deposition of the A.E. C. and through attempted deposition of the agencies whom they believed to have such reports, to uncover facts supporting their claim. The grant of summary judgment prematurely terminated the discovery process and foreclosed plaintiffs' opportunity to substantiate their allegations.

Since unresolved questions of fact existed as to both of plaintiffs' arguments under NEPA, summary judgment was plainly inappropriate. On remand, plaintiffs' discovery—subject of course to the possible interposition of valid claims of privilege—should be allowed to continue.[17]

Reversed and remanded.

14. We do not here decide that the statement is inadequate, but only that the district court is not to foreclose an opportunity to plaintiffs to make their submission on this point.

15. 42 U.S.C. § 4332 (1970).

16. We do not consider whether the court may decline to order the release of agency comments on the ground that they are not so related to the impact statement as to require their inclusion therein, or on the ground that they are exempt from public disclosure by virtue of exemptions

set forth in the Freedom of Information Act, 5 U.S.C. § 552 (1970), which should be transported into NEPA. No such grounds were presented to us at this time, and accordingly we express no opinion thereon.

17. Since defendants stated that the test would not take place without ample notice to the plaintiffs, we see no need to consider whether or not to issue a stay *pendente lite*. If the need arises, the question of a stay may, of course, be addressed to the district court.