**ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Plaintiffs,**

v.

**Howard H. CALLAWAY et al., Defendants.**

**IZAAK WALTON LEAGUE OF AMERICA et al., Plaintiffs,**

v.

**Howard H. CALLAWAY et al., Defendants.**

**Civ. A. Nos. 74–1190, 74–1191.**

United States District Court, District of Columbia.

Oct. 4, 1978.

---

6. *See* fn. 4 *supra.*

Joseph V. Karaganis, Sanford R. Gail, Joseph D. Feeney, Stuart E. Vaughn, Chicago, Ill., for plaintiffs.

Richard J. Boyd, Asst. Atty. Gen. of Wis., Madison, Wis., for plaintiff-intervenor, State of Wisconsin.

Fred R. Disheroon, Irwin L. Schroeder, Dept. of Justice, Washington, D. C., for defendants.

Ramsay D. Potts, Jr., George V. Allen, Jr., J. Thomas Lenhart, Washington, D. C., for defendant-intervenor, Association for the Improvement of the Mississippi River.

David R. Melincoff, Washington, D. C., for defendant-intervenors, Water Resources Congress, Ohio Valley Improvement Association, Inc., and Upper Mississippi Waterway Association, Inc.

James B. Early, Sp. Asst. Atty. Gen. of Minn., Roseville, Minn., for amicus curiae, State of Minnesota.

## MEMORANDUM

CHARLES R. RICHEY, District Judge.

In its Memorandum Opinion and Order of May 2, 1977 this Court denied defendants' and defendant-intervenors' motions to dismiss. 431 F.Supp. 722 (D.D.C.1977). In denying these motions, this Court held that section 102(2)(C) of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(2)(C), requires the Corps of Engineers to submit an environmental impact statement (EIS) to Congress with its proposal for authorizing legislation for the construction of a replacement Lock and Dam 26. The Court further held that plaintiffs herein had a right of action and standing to challenge the adequacy of the EIS that defendants had prepared. Finally, the Court held that plaintiffs' claim for declaratory relief as to the adequacy of the present EIS was sufficient to render the case justiciable.

After the motions to dismiss were denied, the parties filed a series of briefs with respect to plaintiffs' then-pending motion for summary judgment. These briefs were quickly followed by an interim skirmish, a series of pleadings, and ultimately a hearing on the question of whether there *remained* before Congress a "proposal for legislation" by the Executive Branch with respect to Lock and Dam 26 at Alton, Illinois. On November 29, 1977, this Court concluded that such a proposal for legislation indeed remained before Congress and, accordingly, the Court directed the parties to focus once again on the plaintiffs' pending motion for summary judgment. Thereafter, the parties filed a second series of briefs on plaintiffs' motion for summary judgment and defendants and defendant-intervenors filed cross-motions for summary judgment. On June 2, 1978, the parties presented oral arguments on the pending summary judgment motions. The case is now before the Court on these cross-motions for *summary judgment.*

Plaintiffs' motion for summary judgment seeks a declaratory judgment that the *Final EIS* prepared by the Corps of Engineers to accompany the proposed authorizing legislation for Lock and Dam 26 is *inadequate* and fails to comply with the NEPA's requirements. Plaintiffs' motion also seeks a declaratory judgment that the Corps' decision to propose the authorizing legislation here in issue was arbitrary and capricious in light of the true costs and benefits of the proposed project. For the reasons hereinafter stated, the Court concludes that it *cannot* presently *grant* any of the pending motions for summary judgment with respect to the *adequacy of the present EIS.* However, the Court will *grant* defendants' and defendant-intervenors' motion for summary judgment with respect to plaintiffs' claim that the Corps' decision to propose authorizing legislation was *arbitrary and capricious.*

### I. *The Adequacy of the EIS Now Before Congress*

As this Court stated in its 1977 opinion in this case, the question of whether the *adequacy* of an EIS for a legislative proposal can be reviewed by a court before Congress has acted on the proposal was an issue of first impression. Thus, in deciding whether the present EIS is adequate, the Court is without the guidance of other cases in which the adequacy of legislative proposal impact statements have been challenged. Assuming, without deciding, that the same standards for adequacy under NEPA govern legislative proposal EIS's as govern run-of-the-mill "Federal Action" EIS's, the Court concludes that material facts are presently in dispute that preclude the Court from granting any of the pending motions for summary judgment.

Plaintiffs' primary challenges to the present EIS are four: (1) the absence of programmatic/systemic analysis of the cumulative environmental impacts of the series of locks and dams and the navigation channel beginning at Alton and running upstream on the Illinois River; (2) the allegedly erroneous and unsupported calculation of benefits attributable to the proposed Lock and Dam 26 replacement; (3) the allegedly erroneous and unsupported projection of traffic increases and the ab-

sence of discussion of the attendant environmental impacts of such increases;[1] and (4) the allegedly insubstantial discussion of alternatives to the proposed project. At least with respect to the first three of these challenges, it appears that there are material issues of fact that are presently in dispute.

### A. The Programmatic Issue

With respect to the absence of programmatic/systemic analysis, there appear to be a number of threshold factual issues that are now in dispute. The Court recognizes, as do the parties, that the parameters of defendants' programmatic duties are defined in significant part by the Supreme Court's 1976 decision in *Kleppe v. Sierra Club*, 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576. In that decision, the Supreme Court held that "comprehensive" or programmatic impact statements, while undeniably appropriate in certain situations, do not necessarily have to analyze the environmental impacts of related projects that are merely "contemplated" rather than "proposed." 427 U.S. at 410 & n.20, 96 S.Ct. 2718. The Court did not, however, explicate when during the course of the development of plans for Federal action an agency's planning becomes a "proposal" as distinguished from a contemplated action. *See* CEQ, *Memorandum on "Kleppe v. Sierra Club" and "Flint Ridge Development Co. v. Scenic Rivers Assn. of Oklahoma,"* (Sept. 16, 1977), *reprinted in* 42 Fed.Reg. 61,069, at 61,071 (Dec. 1, 1977); Note, *Program Environmental Impact Statements: Review and Remedies*, 75 Mich.L.Rev. 107, 117–18 (1976); Note, *The Scope of the Program EIS Requirement: The Need for a Coherent Judicial Approach*, 30 Stan.L.Rev. 767, 790 n.117 (1978).

It appears to the Court that the parties presently dispute whether a series of locks and dams on the Illinois River and the so-called Cal-Sag III project are presently "proposed." The parties also appear to be in sharp disagreement as to whether a twelve-foot navigation channel is "proposed" for the Upper Mississippi and Illinois Rivers. Under *Kleppe*, the threshold determination that must be made is whether these projects are "proposed," and, while the determination may be a combined question of fact and law, the Court cannot make an appropriate determination in the absence of an adequate factual predicate. Since the present record before the Court does not contain sufficient undisputed facts to constitute an adequate factual predicate, and since the parties disagree on the ultimate characterization of the aforesaid projects, it appears that summary judgment is inappropriate on the question of whether defendants acted arbitrarily in excluding programmatic/systemic analysis from the present EIS. Even if the parties were to stipulate that the forestated projects were "proposals," summary judgment would still be inappropriate at this time on the programmatic issue in view of the apparent disputes between the parties on such threshold facts as the degree of interdependence of Lock and Dam 26 with the aforestated projects, the extent to which the several projects will have cumulative or synergistic effects, and the feasibility of meaningful programmatic analysis. *See Kleppe v. Sierra Club*, 427 U.S. at 411, 96 S.Ct. 2718; CEQ Memorandum, *supra*, 42 Fed.Reg. at 61,071.

### B. The Calculation of Benefits and the Projection of Traffic Increases Issues

Even a cursory look at the respective parties' pleadings and their Rule 1–9(h) Statements of Material Facts demonstrates that material facts remain in dispute with respect to plaintiffs' challenges to the adequacy of the impact statement's calculations and projections. Among the facts that appear to be in dispute are the accuracy and existence of record support for de-

---

1. The allegedly erroneous and unsupported projection of traffic increases that will result from the building of the replacement Lock and Dam 26 is being challenged *both* because such projected traffic increases are essential to the calculation of the costs and benefits of the proposed project *and* because more sizeable traffic increases will have more severe environmental impacts on the waterway system.

fendants' commodity forecasts, tonnage projections, and rate and delay savings that can be anticipated if the proposed replacement Lock and Dam 26 is constructed. Accordingly, it appears to the Court that summary judgment is not appropriate at this time with respect to plaintiff's challenge to the impact statement's calculations and projections (and the adequacy of the discussion of the environmental impacts thereof).

### C. The Alternatives Issue

It does not appear to the Court that there presently exist disputes of material fact that are unique to plaintiffs' challenge to the adequacy of the EIS's discussion of alternatives. (This does not mean that no material facts are in fact disputed.) However, it appears to the Court that the adequacy of the Corps' discussion of alternatives cannot be adjudged until the programmatic issues are resolved. It is for this reason that the Court finds that summary judgment is inappropriate at this time on this challenge also.

### D. The Appropriateness of an Evidentiary Hearing

Defendants have suggested in their pleadings that any evidentiary hearing by this Court might be inappropriate. The Court is cognizant of the uncertainty that now exists with respect to the proper judicial role in reviewing impact statements for compliance with NEPA. Indeed, it appears that no definitive guidance has ever been provided to the federal trial courts with respect to whether their role in ensuring strict compliance with NEPA's procedural mandate is limited to review of the administrative record or whether their role includes fact-finding outside of the administrative record. This uncertainty has been compounded in recent years by the Supreme Court's decisions in *Kleppe v. Sierra Club, supra*, and in *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 98 S.Ct. 1197, 1215–17, 55 L.Ed.2d 460 (1978).

After extensive consideration of the pertinent authorities, this Court concludes that the appropriate role for the Court in this case is that articulated by the Second Circuit last year in *County of Suffolk v. Secretary of the Interior*, 562 F.2d 1368, 1384–85 (2d Cir. 1977), *cert. denied*, 435 U.S. 519, 98 S.Ct. 1238, 55 L.Ed.2d 460 (1978). In that opinion, the Second Circuit distinguished NEPA cases seeking review of the adequacy of impact statements from "ordinary suit[s] challenging nonadjudicatory, nonrulemaking agency action." *Id.* at 1384. Such "ordinary" judicial review suits seek "substantive review" of agency actions. In contrast, suits seeking review of the adequacy of EIS's seek to ensure compliance with the procedural requirements of a congressional enactment (NEPA) other than the APA. As the *County of Suffolk* court said, "a primary function of the court [in NEPA cases] is to insure that the information available to the decision-maker includes an adequate discussion of environmental effects and alternatives." *Id.* Thus, the Second Circuit reasoned:

A suit under NEPA challenges the adequacy of part of the administrative record itself—the EIS. Glaring sins of omission may be evident on the face of the statement, see, e. g., *Chelsea Neighborhood Associations v. United States Postal Service*, 516 F.2d 378 (2d Cir. 1975); *Silva v. Lynn*, 482 F.2d 1282, 1283 (1st Cir. 1973). Other defects may become apparent when the statement is compared with different parts of the administrative record. See, e. g., *I–291 Why? Association v. Burns*, 372 F.Supp. 223 (D.Conn.1974), *aff'd per curiam*, 517 F.2d 1077 (2d Cir. 1975). *Generally, however, allegations that an EIS has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept "stubborn problems or serious criticism . . . under the rug." Silva v. Lynn*, 482 F.2d at 1285, *raise issues sufficiently important to permit the introduction of new evidence in the district court, including expert testimony with respect to technical matters, both in challenges to the sufficiency of an environmental impact statement and in suits attacking an agency determination that no such statement is necessary.*

*Id.* at 1384–85 (emphasis added) (footnotes omitted). As the *County of Suffolk* court further explained, evidence introduced by plaintiffs for the first time in the district court may be probative "insofar as it tend[s] to show either that the agency's research or analysis was clearly inadequate or that the agency improperly failed to set forth opposing views widely shared in the relevant scientific community." *Id.* at 1385.

■ In *Flint Ridge Development Co. v. Scenic Rivers Association of Oklahoma*, 426 U.S. 776, 787, 96 S.Ct. 2430, 2438, 49 L.Ed.2d 205 (1976), the Supreme Court emphasized:

NEPA's instruction that all federal agencies comply with the impact statement requirement—and with all the other requirements of § 102—"to the fullest extent possible," 42 U.S.C. § 4332, is neither accidental nor hyperbolic. Rather, the phrase is a deliberate command that the duty NEPA imposes upon the agencies to consider environmental factors not be shunted aside in the bureaucratic shuffle.

Of course, in determining whether a federal agency has so complied with NEPA's procedural requirements "to the fullest extent possible," the reviewing court must be guided by the "rule of reason." *See, e. g., Concerned About Trident v. Rumsfeld*, 180 U.S.App.D.C. 345, 555 F.2d 817, 827 (1976); *County of Suffolk v. Secretary of the Interior*, 562 F.2d 1368, 1378 (2d Cir. 1977), *cert. denied*, 435 U.S. 519, 98 S.Ct. 1238, 55 L.Ed.2d 460 (1978). But nothing inherent in this "rule of reason" standard precludes the reviewing court from considering facts outside the strict confines of the administrative record. Accordingly, for the reasons set forth by the Second Circuit in *County of*

*Suffolk*, the Court concludes that an evidentiary hearing is the appropriate means of resolving the material facts that are apparently in dispute in this case.[2]

### II. *The Corps Decision to Propose Authorizing Legislation for Lock and Dam 26*

■ In addition to challenging the adequacy of the EIS that was prepared to accompany defendants' legislative proposal, plaintiffs also challenge defendants' decision to make the proposal. According to plaintiffs, the costs of the proposed replacement Lock and Dam 26 so exceed the benefits that defendants' decision to seek authorizing legislation for the project was "arbitrary and capricious" within the meaning of section 10(e) of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A). Thus, plaintiffs ask this Court to engage in "substantive" review of the legislative proposal.[3]

Most courts that have considered the issue have held that agency decisions to take action on projects having a significant environmental impact may be reviewed substantively by the courts to ensure that the decision was not arbitrary and capricious. *See, e. g., Calvert Cliffs Coordinating Committee v. AEC*, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1115 (1971); *Environmental Defense Fund, Inc. v. Corps of Engineers*, 470 F.2d 289, 297–301 (8th Cir. 1972), *cert. denied*, 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 160 (1973). *See also* Leventhal, *Environmental Decisionmaking and the Role of the Courts*, 122 U.Pa.L.Rev. 509, 527–29 (1974); W. Rogers, *Environmental Law*, § 7.5, at 741 n.23 (1977). However, just as no court has yet confronted the problem of reviewing a legislative-proposal EIS for adequacy,

---

**2.** The Court wishes to emphasize that it does not intend to suggest that *only* the factual issues discussed herein are material and/or genuinely disputed. Only after the parties have focused clearly on which issues are in fact material, and only after the parties have made good faith efforts to stipulate to as many of such material issues of fact as possible will the Court be in a position to delimit the scope of the evidentiary hearing herein to specific factual issues.

**3.** It is appropriate to emphasize that to the extent plaintiffs now or in the future seek substantive review of the defendants' actions, it is clear that judicial review, if any is appropriate, is limited to consideration of the administrative record. Thus, any evidence adduced for the first time in the evidentiary hearing contemplated by section I of this opinion would be irrelevant to any substantive review under the well-established "arbitrary and capricious" standard of 5 U.S.C. § 706(2)(A).

so too has no court yet ruled on whether an agency decision to propose legislation is subject to substantive judicial review. Thus, this case presents the Court with yet another issue of first impression.

In its 1977 opinion in this case, the Court held, *inter alia*, that defendants' preparation of a Final EIS to accompany the proposed legislation on Lock and Dam 26 was "final agency action" within the meaning of the APA. On this basis, this Court held that judicial review of the adequacy of the EIS was available under 5 U.S.C. §§ 701–06. At that time, however, the Court was not faced with, and expressed no opinion on, the question of whether plaintiffs could seek "substantive review" of defendants' decision to propose the legislation.

The Court recognizes that the Corps' decision to propose legislation could be read to be "final agency action" under a broad reading of 5 U.S.C. §§ 551(13), 701–06. The Court further recognizes that since neither NEPA nor its legislative history contain "clear and convincing evidence" of Congress' intent to deny judicial review of agency decisions to propose legislation likely to have significant environmental impacts, it could be argued that the APA provides for judicial review of such agency decisions. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 140–41, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

■ Notwithstanding the foregoing, the Court believes that there can be no doubt that judicial review of agency decisions to propose legislation would be inappropriate, and this Court will not engage in such review in the absence of compelling precedent for such judicial intervention in the legislative process. In its 1977 opinion, this Court indicated that it did not believe that

declaratory relief as to the adequacy of a legislative-proposal EIS would interfere with the legislative process; this Court emphasized at that time that it "would never so interfere with the legislative process." 431 F.Supp. at 727 n.5. The declaratory relief plaintiffs now seek as to whether the Corps' decision to propose authorizing legislation was arbitrary and capricious invades the traditional province of Executive discretion, *cf. Laird v. Tatum*, 408 U.S. 1, 16–17, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); *Curran v. Laird*, 136 U.S.App.D.C. 280, 420 F.2d 122, 131 (1969) (en banc) (Leventhal, J.), and may have a chilling effect on the legislative process. For these reasons, the Court concludes that the Corps' decision to propose authorizing legislation for a replacement Lock and Dam 26 is not subject to judicial review, and the Court will grant defendants' and defendant-intervenors' motions for summary judgment on this claim.[4]

### III. *Summary*

In conclusion, the Court will deny the cross-motions for summary judgment with respect to the adequacy of the Final EIS prepared by the Corps of Engineers to accompany its proposal of legislation authorizing the construction of a replacement Lock and Dam 26. The Court finds that an evidentiary hearing is appropriate and necessary to resolve apparently disputed issues of material facts with respect to this issue. The Court will, however, grant defendants' and defendant-intervenors' motion for summary judgment with respect to plaintiffs' claim that the Corps' decision to propose legislation was arbitrary and capricious.

---

**4.** In so ruling, the Court does not intend to foreclose plaintiffs from seeking substantive review of subsequent Corps' action with respect to the replacement of Lock and Dam 26. In other words, if Congress enacts authorizing legislation for a replacement Lock and Dam 26, and if the Corps decides to construct a replacement lock and dam after such legislation is enacted, then it *may* be appropriate for plaintiffs to seek judicial review under the authori-

ties set forth in the text at page 10, *supra*, of the Corps' decision to commence construction. The Court expresses no opinion at this time as to whether such post-legislation substantive review would be appropriate; nor does the Court intend this opinion to suggest that any other issues may or may not be appropriate for judicial resolution if and when Congress enacts authorizing legislation.