ATCHISON, TOPEKA AND SANTA FE
RAILWAY COMPANY et al.,
Plaintiffs,

v.

Howard H. CALLAWAY et al.,
Defendants.

IZAAK WALTON LEAGUE OF
AMERICA et al., Plaintiffs,

v.

Howard H. CALLAWAY et al.,
Defendants.

Civ. A. Nos. 74–1190, 74–1191.

United States District Court,
District of Columbia.

May 2, 1977.

Joseph V. Karaganis, Sanford R. Gail, Joseph D. Feeney, Stuart E. Vaughn, Chicago, Ill., Jon T. Brown, Washington, D. C., for plaintiffs.

Richard J. Boyd, Asst. Atty. Gen., State of Wis., Madison, Wis., for plaintiff-intervenor, State of Wis.

Fred R. Disheroon, Irwin L. Schroeder, Jr., Dept. of Justice, Washington, D. C., for defendants.

Ramsay D. Potts, George V. Allen, Jr., Barry M. Smoler, Washington, D. C., for defendant-intervenor, Ass'n for the Improvement of the Mississippi River.

David R. Melincoff, Washington, D. C., for defendant-intervenors, Water Resources Congress, Ohio Valley Improvement Ass'n, Inc., and Upper Mississippi Waterway Ass'n, Inc.

James B. Early, Sp. Asst. Atty. Gen., State of Minn., Roseville, Minn., for amicus curiae, State of Minn.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. *Introduction*

This case is before the Court on defendants' and defendant-intervenors motions to dissolve the preliminary injunction and to dismiss. The Court also has before it plaintiffs' motion for summary judgment which, *inter alia* (*see* note 3 *infra* ), seeks a declaratory judgment that the Corps of Engineers' final environmental impact statement fails to comply with the requirements of section 102(2)(C) of the National Environmental Policy Act [NEPA], 42 U.S.C. § 4332(2)(C). As hereinafter set forth, the Court concludes that since *construction* on the project here in issue is neither imminent nor a reasonably foreseeable likelihood, the Court's outstanding preliminary injunction is appropriately dissolved, without prejudice to a renewed request by plaintiffs for the same or similar relief in the future when and if such relief becomes appropriate. The Court further concludes that plaintiffs have a right of action and standing to enforce section 102(2)(C)'s EIS requirement for legislative proposals, and the "effectiveness" of the declaratory relief sought by plaintiffs, if granted by the Court, is sufficient to render this case justiciable. Accordingly, the Court will grant the motions to dissolve the preliminary injunction, but will deny the motions to dismiss and will therefore direct the defendants and defendant-intervenors to respond to plaintiffs' pending motion for summary judgment.

### II. *Background*

The present posture of this case is as follows: On September 6, 1974, this Court held that plaintiffs had demonstrated that they were likely to prevail at trial in their

contentions that (1) the then proposed Locks and Dam 26 project was required to be authorized by Congress pursuant to 33 U.S.C. § 401 (1970), and Congress had not authorized the building of the proposed Locks and Dam 26, and (2) the defendants had not complied with section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C). *Atchison, Topeka and Santa Fe R. R. Co. v. Callaway,* 382 F.Supp. 610 (D.D.C.1974). Accordingly, the Court issued a preliminary injunction restraining defendants from constructing the proposed Locks and Dam 26 until defendants complied with 33 U.S.C. § 401 and NEPA.

Subsequent to the issuance of that preliminary injunction, the defendants restudied the original proposal for Locks and Dam 26. In August 1975, the District Engineer in St. Louis completed a draft supplemental EIS and an updated economic analysis. He recommended that the present Locks and Dam 26 be replaced with a new dam containing two locks, each 110 feet wide and 1,200 feet long, at a site approximately two miles downstream from the present location. After the Lower Mississippi Valley Division Engineer concurred, the Chief of Engineers asked the Board of Engineers for Rivers and Harbors to review all actions associated with Locks and Dam 26. The Board recommended, *inter alia*:

(1) That approval be obtained from Congress to proceed immediately toward construction of a new dam and 110-foot by 1,200-foot main lock at a location approximately two miles downstream of the existing Locks and Dam 26.

(2) That the operational need and economic justification of a second lock be recognized at this time, and that the design and construction of the dam provide for future expansion.

(3) That . . . additional economic and environmental studies . . . be undertaken immediately, and that the findings and recommendations concerning a second lock be forwarded to Congress for approval.

Report of Board of Engineers for Rivers and Harbors, at vi (February 1976).

On March 15, 1976, the Chief of Engineers issued his report to the Secretary of the Army with regard to Locks and Dam 26. This report substantially adopted the recommendations of the Board of Engineers and was accompanied by a draft EIS. The revised draft EIS and an economic formulation were then circulated to interested states, federal agencies, and others for comment.

On April 22, 1976, after receiving the report of the Chief of Engineers, Secretary of the Army Martin R. Hoffman concluded that in light of the

> proposed report recommending congressional authorization of a different project, continuation of the prior approval is unnecessary and also may be the cause of some misinterpretation. Accordingly I hereby terminate, effective this date, the above cited approval to construct the replacement project for Locks and Dam 26.

> I await [the] final report on the replacement project and the results of the full review it will have undergone. I have informed the appropriate Committee Chairman of this action and of my intention to submit my recommendations, whatever they may be, to Congress for its consideration.

Memorandum from the Secretary of the Army to the Chief of Engineers (April 22, 1976).

Finally, on August 24, 1976, Secretary Hoffman formally recommended to Congress in a "Letter of Transmittal" that it "authorize the construction of a replacement dam and 1200-foot lock" and that it *not* authorize an auxiliary lock "until such time as the interagency study indicates that such lock should be constructed." Along with the Letter of Transmittal, Secretary Hoffman forwarded to Congress proposed legislation, which would implement his recommendations, and a Final Environmental Impact Statement.

III. *In Light Of Secretary Hoffman's Withdrawal Of Authorization For The Original Locks And Dam 26 Project And His Submission Of Authorizing Legislation To Congress For The Revised Lock And Dam 26 Project, The Court Will Dissolve Its Preliminary Injunction*

■ The preliminary injunction issued by this Court in September 1974 restrained the defendants from commencing construction on the proposed Locks and Dam 26 project until they had complied with the applicable federal laws. The proposed project then in issue had been authorized by the Secretary of the Army; however, Secretary Hoffman expressly terminated that construction authority in April 1976. Thus, the original proposal is no longer viable. The new Lock and Dam 26 proposal has been submitted to Congress for approval,[1] and there appears to the Court to be no likelihood of any construction on the proposal until Congress enacts legislation authorizing such construction. Therefore, the preliminary injunction restraining construction is entirely unnecessary to ensure that plaintiffs do not suffer irreparable injury.

Under these circumstances, since there is no imminence, or even a reasonably foreseeable likelihood, of *construction, cf. Two Guys from Harrison-Allentown, Inc. v. McGinley*, 366 U.S. 582, 589, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961), the Court concludes that it would be an appropriate exercise of its equity jurisdiction to dissolve the existing preliminary injunction restraining construction. "There is . . . no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have arisen." *System Federation No. 91, Ry. Employees' Dept. v. Wright*, 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961).

*See Consolidated Edison Co. v. FPC*, 167 U.S.App.D.C. 134, 511 F.2d 372, 378 (1974).

Of course, the dissolution of this preliminary injunction will be without prejudice to plaintiffs should they seek the same or similar relief in the future when and if such relief becomes appropriate.

IV. *The Court Will Deny Defendants' Motions To Dismiss: Section 102(2)(C) Requires The Corps Of Engineers To Submit An Environmental Impact Statement To Congress With Its Proposal For Authorizing Legislation For The Construction Of Lock And Dam 26, And Plaintiffs Have A Right Of Action And Standing To Enforce That Requirement, And Their Claim Is Justiciable*

Section 102(2)(C) of NEPA, 42 U.S.C. 4332(2)(C), "directs that, to the fullest extent possible . . . all agencies of the Federal Government shall . . . include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment" an environmental impact statement. To comply with this mandate and with the Corp of Engineers' own implementing regulation, which specifically requires the preparation of an EIS for "[r]ecommendations or reports to the Congress for legislation affecting Corps of Engineers programs including proposals to authorize projects (survey, review, and authorization reports) and other legislation, exclusive of appropriations," 33 C.F.R. § 209.410(e)(1) (1976)[2]; *see also* 40 C.F.R. §§ 1500.5(a)(1), 1500.12 (1976), defendants prepared a final EIS which they submitted to Congress along with the proposed legislation. Plaintiffs now seek a *declaratory judgment* that this final EIS is *inadequate* and does not satisfy the requirements of section 102(2)(C).[3]

*About Trident v. Rumsfeld*, 555 F.2d 817 (D.C. Cir.1976).

---

1. The parties use the term Lock and Dam 26 (rather than the plural Locks and Dam 26) to describe the Department's new proposal for authorization of a single lock.

2. It is well-settled that the Department is bound by its own regulations. *See Concerned*

3. Plaintiffs, in their pending motion for summary judgment, also seek: (1) a declaratory judgment that the Corps of Engineers' use of 33

Defendants argue that "[s]ince the Secretary of the Army has committed that Department to take no action toward [the reconstruction of Locks and Dam 26] unless expressly authorized by Congress," and since Congress has not yet authorized any such construction, "there is, at this time, no case or controversy which is subject to judicial review, nor is there any effective relief which this Court could conceivably grant." [4] Similarly, defendants argue that plaintiffs have no standing to challenge the adequacy of the final EIS since they suffer no "injury in fact" as a result of the Secretary's action in proposing legislation. The essence of defendants' argument is that a court can *never* review the adequacy of an EIS for a legislative proposal unless and until Congress takes action on the proposal.

This issue is apparently one of first impression; no case of which the Court is aware has addressed the question of whether the adequacy of an EIS for a legislative proposal can be reviewed by a court before Congress has acted on the proposal. In fact, surprisingly few cases have even considered whether the total failure of an agency to prepare an EIS for a legislative proposal can be challenged. The majority of the cases that have considered the question have held, though without substantial analysis, that an agency's total failure to prepare an EIS for a legislative proposal can be reviewed by a court at the behest of a private plaintiff. *See, e. g., Sierra Club v. Morton,* 395 F.Supp. 1187 (D.D.C.1975), *ap-peal docketed,* No. 75–1781 (D.C.Cir. Sept. 9, 1975); *Environmental Defense Fund v. TVA,* 339 F.Supp. 806 (E.D.Tenn.), *aff'd,* 468 F.2d 1164, 1181–82 (6th Cir. 1972). *See also* F.Anderson, *The National Environmental Policy Act,* in Federal Environmental Law, at 331–35 (E. Dolgin & T. Guilbert ed. 1974). However, one case in this district recently held that section 102(2)(C) "was designed solely to aid the Congress and was not intended to create a right of action in a private party to claim injury in some fashion from the ongoing legislative process." *Wingfield v. Office of Management and Budget,* Civil Action No. 77–489, Transcript at 6 (D.D.C. April 4, 1977), *appeal docketed,* (D.C.Cir. April 4, 1977).

Upon careful consideration of section 102(2)(C), the policies underlying its enactment, and the numerous cases that have analyzed the purposes of the EIS requirement for "recommendation[s] and report[s] for . . . other major Federal actions significantly affecting the quality of the human environment," 42 U.S.C. § 4332(2)(C), the Court concludes that (1) the section 102(2)(C) EIS requirement for legislative proposals is enforceable by a private right of action, and that private right of action includes challenges to the adequacy of, as well as to the absence of, an EIS; (2) plaintiffs in the present case have standing to maintain such a challenge to the adequacy of the EIS for the proposed legislation authorizing the construction of Lock and Dam 26; and (3) this case is justiciable

---

U.S.C. § 5 as authority for constructing new navigation facilities of larger dimensions is illegal and in violation of 33 U.S.C. § 401; (2) a declaratory judgment that the Corps has violated 42 U.S.C. § 1962–2 by failing to analyze sufficiently alternative transport modes; and (3) a permanent injunction against construction of any new Lock and Dam 26 structure until the errors in the final EIS are corrected. The Court concludes, however, that, in light of the present posture of the Lock and Dam 26 proposal, neither of the non-NEPA claims for declaratory judgment are presently ripe for adjudication, and the claim for permanent injunctive relief based on the alleged NEPA violation is clearly inappropriate at this time. *See* section II, *supra.* Thus, only if plaintiffs' NEPA

claim for declaratory relief presents a "case or controversy" and is justiciable can the Court refuse to dismiss the case and subsequently proceed to the merits.

Of course, *if* the Court ultimately determines and issues a declaratory judgment on the merits that the Corps' final EIS does not comply with section 102(2)(C), and *if* Congress ultimately authorizes the construction of the proposed Lock and Dam 26 *without* exempting the project from NEPA, then plaintiffs could seek from this Court an injunction to restrain construction until defendants had fully complied with NEPA.

4. Federal Defendants' Supplemental Memorandum of December 28, 1976, at 4.

in that the Court has the power to enter a declaratory judgment as to the adequacy of the EIS and such a judgment would provide effective relief to the plaintiffs.

In ruling that the section 102(2)(C) EIS requirement for legislative proposals was not enforceable by a private right of action, the *Wingfield* court emphasized that

> Congress has within its own investigatory and other resources ample means to obtain from the Executive whatever information it desires relating to environmental impact prior to taking action. It is clear, of course, that Congress did not intend to stultify itself by this legislation [NEPA] if at any point it was satisfied it had enough information to proceed in a given situation.

*Wingfield, supra,* Transcript at 4.[5] The Court does not doubt that Congress imposed the EIS requirement for proposed legislation to ensure that all agencies would provide Congress with detailed environmental information that could be considered by the legislators along with the agencies' proposals for legislation. The Court concludes, however, that the EIS requirement, *both* on "proposals for legislation" *and* on "other major Federal actions," was also intended by Congress to provide detailed environmental information to the public to permit them to participate in a meaningful way in further decisionmaking both at the adminis-

trative and legislative levels. In this way, NEPA was intended to ensure that both Congress and the public will be advised of the predicted consequences of the proposed legislation and the alternatives thereto, and they will therefore be able to act responsibly thereon.

This interpretation of section 102(2)(C) is supported by substantial precedent. *See, e. g., Sierra Club v. Morton,* 510 F.2d 813, 819 (5th Cir. 1975); *Trout Unlimited v. Morton,* 509 F.2d 1276, 1282 (9th Cir. 1974); *Silva v. Lynn,* 482 F.2d 1282, 1285 (1st Cir. 1973). Thus, the district court in *Environmental Defense Fund v. TVA,* 339 F.Supp. at 810, said with regard to the EIS requirement for proposed legislation:

> The purpose of a section 102(2)(C) detailed environmental impact statement is (1) to aid the agency's decision-making process and (2) *to advise the public of the environmental consequences of the proposed action.* The requirement seeks to insure that each agency decision-maker has before him, and takes into proper account, all environmental impacts of a particular project. Only if this is done will the most intelligent, optionally beneficial decision be likely to result. Moreover, the detailed statement provides evidence that these factors have been taken into account. *More importantly, it allows those removed from the decision-making*

---

5. One significant difference between *Wingfield* and the instant case is that plaintiff Wingfield sought to enjoin various agencies and departments from transmitting recommendations to Congress before an EIS was prepared. He also sought to enjoin the Secretary of the Interior from testifying before the House Committee on Interior and Insular Affairs. Of course, such relief would have interfered substantially with the legislative process. This Court agrees with that decision that, in the absence of express legislative direction, it should not be inferred from section 102(2)(C) that Congress so intended "to stultify itself." This Court would never so interfere with the legislative process. In the instant case, on the other hand, plaintiffs seek no relief that would in any way interfere with the legislative process.

In fact, the declaratory relief sought by plaintiffs, if ultimately granted by the Court, would likely aid the legislative process. First, it

would enable interested parties, both governmental and nongovernmental, to participate more fully and effectively in the process. Second, it would enable the Congress to know before voting on the authorizing legislation whether the final EIS complies with NEPA, as interpreted by the courts. In that way, Congress will be informed before and when it votes as to whether it is necessary to consider exempting the proposal from NEPA's EIS requirement. While this second "aid" to the legislative process would probably not, standing alone, render plaintiffs' claim cognizable as a "case or controversy," there is no reason why, in a case such as the present where there is an established "case or controversy," the courts should not recognize that one effect of the EIS requirement for legislative proposals is to advise the Congress of the legal status of the legislation under consideration.

*process to evaluate and balance the factors on their own.*

(Emphasis added.)

The Court of Appeals for this Circuit has also given express recognition to the important role that an EIS plays in informing the public of environmental information concerning proposals for major Federal actions. In *Jones v. District of Columbia Redevelopment Land Agency,* 162 U.S.App.D.C. 366, 499 F.2d 502 (1974), plaintiffs challenged the failure of defendants District of Columbia Redevelopment Land Agency (RLA), National Capital Planning Commission (NCPC), and U.S. Department of Housing and Urban Development (HUD) to comply with section 102(2)(C) in formulating and executing urban redevelopment plans. The decisionmaking process for the redevelopment plans in question required: (1) RLA to submit a proposed program to NCPC for adoption or modification; (2) if NCPC approved the proposal, the plan would then be submitted to the District of Columbia City Council which decides whether to empower RLA to submit the proposal to HUD; (3) HUD would then decide whether or not to fund the proposal. The particular focus of the Court of Appeals' consideration was whether section 102(2)(C) required RLA to prepare an EIS to accompany its proposal to NCPC. The court concluded that RLA's submission was itself "a proposal for federal action requiring an environmental impact statement." 499 F.2d at 510. The court reasoned as follows:

> The federal defendants argue, however, that to require RLA to submit an environmental impact statement to NCPC together with its action year plan would be inefficient, since NCPC may well modify the plan and thus render RLA's impact statement an anachronism. But, in our view, this argument proves too much. Indeed, it radically misconceives the purposes of the impact statement requirement. Such statements were not to be merely *post hoc* environmental rationalizations of decisions already fully and finally made. Rather their purpose is to ensure "meaningful consideration of environmental factors at all stages of agency decision making," and to inform both the public and agencies implicated at subsequent stages of decision-making of the environmental costs of the proposal. Thus, it is precisely because NCPC has the power to modify RLA's action year proposals that impact statements accompanying the proposals are necessary. NCPC's decision on whether to approve the proposals as presented or to modify them may be, and should be, vitally affected by the information contained and the conclusions drawn in RLA's impact statements. *Equally important, perhaps, the public will be afforded an opportunity prior to NCPC's decision, to inform it of data and views contrary to those submitted by RLA, thus ensuring that NCPC's own environmental impact statement will be premised on the fullest possible canvassing of environmental issues, and that environmental factors will be taken into account before the action year plans take on the perhaps irreversible momentum of NCPC approval.*

499 F.2d at 510–11 (emphasis added). This decision is particularly apposite to the present case in that the NCPC—the agency-recipient of the RLA impact statement—acts in a quasi-legislative capacity in determining whether to approve the RLA proposal.

This interpretation of section 102(2)(C) leads the Court to conclude that the requirement of an adequate EIS for legislative proposals can be enforced by a private right of action. It is beyond peradventure that the requirement of an adequate EIS for "other major Federal actions" is enforceable by a private right of action. *See* F. Anderson, NEPA in the Courts 16–23 (1973). Although *Wingfield* concludes that no corollary right of action exists to enforce the EIS requirement for legislative proposals, and while defendants contend that at least the *adequacy* of an EIS for a legislative proposal cannot be challenged by a private action pending congressional consideration of the proposal, this Court can discern no such distinction between the two EIS requirements of sec-

tion 102(2)(C). Neither the language of section 102(2)(C) itself nor the purposes served by the two types of EIS suggests that Congress intended to distinguish between the two requirements.

Moreover, in the absence of an express legislative directive to the contrary, this Court must presume that judicial review of the defendants' alleged failure to comply with NEPA's EIS requirement is available to plaintiffs: Judicial review of final agency action is presumptively available under the Administrative Procedure Act [APA], 5 U.S.C. §§ 701–06 (1976). *See Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140–41, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); L. Jaffe, Judicial Control of Administrative Action 372–76 (1965). Section 10(c) of the APA, 5 U.S.C. § 704, states that "final agency action for which there is no adequate remedy in a court [is] subject to judicial review." In the present case, there can be no doubt that an agency's failure to prepare an adequate EIS in accordance with section 102(2)(C) is "agency action" for purposes of the APA. *See* 5 U.S.C. § 551(13). Finally, the Supreme Court had indicated that such action is "final" and hence subject to review. As the Court said in *Kleppe v. Sierra Club*, 427 U.S. 390, 406 n. 15, 96 S.Ct. 2718, 2729, 49 L.Ed.2d 576 (1976):

> [T]he time at which a court enters the process is when the report or recommendation on the proposal is made, and someone protests either the absence or the adequacy of the final impact statement.

This is the point at which an agency's action has reached sufficient maturity to assure that judicial intervention will not hazard unnecessary disruption.

On the basis of all the foregoing, this Court concludes that the defendants' alleged failure to prepare an adequate EIS as required by section 102(2)(C) is subject to judicial review.[6]

■ The Court further concludes that plaintiffs herein are proper parties to seek such judicial review by a private action. Section 10(a) of the APA, 5 U.S.C. § 702, provides that persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute" are "entitled to judicial review thereof." As concluded above, one major purpose of the EIS requirement for legislative proposals (and for other major Federal actions) is to provide the public with information about the environmental impacts of proposed projects to permit meaningful participation by interested parties in the decisionmaking processes. Plaintiffs herein are indisputably interested in participating in the legislative consideration of the proposed authorizing legislation for Lock and Dam 26, and accordingly they are "adversely affected" and "aggrieved" by the defendants' alleged failure to prepare and to make available an adequate EIS. Thus, pursuant to 5 U.S.C. § 702, plaintiffs are *entitled* to judicial review of the agency's alleged failure to prepare an adequate EIS to accompany its proposed legislation.[7]

■ The Court also concludes that plaintiffs herein have alleged sufficient "injury

---

6. While the APA creates the right to judicial review of the defendants' action, it is now settled that the APA is not itself jurisdictional. *See Califano v. Sanders,* —— U.S. ——, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Although this Court's jurisdiction has not been challenged, it is worthwhile to note that jurisdiction in this case is clearly conferred by 28 U.S.C. § 1331(a), *as amended by* Public Law No. 94–574, 90 Stat. 2721 (Oct. 21, 1976), *without* regard to the amount in controversy. There can be no doubt that this case "arises under" both NEPA and the APA, and it is clear that Congress considered cases such as this "appropriate matters for the exercise of Federal judicial power regardless of the monetary amount involved."

*Califano v. Sanders, supra,* 97 S.Ct. at 985 n. 7, *quoting* S.Rep.No.94–996, 94th Cong., 2d Sess. 12 (1976).

7. As the Supreme Court held in *Aberdeen and Rockfish R.R. Co. v. Students Challenging Regulatory Agency Procedures (SCRAP II),* 422 U.S. 289, 319, 95 S.Ct. 2336, 2355, 45 L.Ed.2d 191 (1975): "NEPA does create a [discrete] procedural obligation on government agencies to give written consideration of environmental issues in connection with certain major federal actions *and a right of action in adversely affected parties to enforce that obligation.*" (Emphasis added.)

in fact" to satisfy the constitutional "case and controversy" limitations on standing. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Defendants' alleged failure to prepare an adequate EIS in accordance with section 102(2)(C) would have an adverse effect on plaintiffs' ability to participate in the legislative process by denying them access to important environmental information about the proposed construction of Lock and Dam 26. A comparable allegation of injury to various plaintiffs' "informational interests" was held to be sufficient to confer standing by the Court of Appeals for this Circuit in *Scientists' Institute for Public Information, Inc. v. AEC,* 156 U.S.App.D.C. 395, 481 F.2d 1079, 1087 n. 29 (1973). As that court reasoned,

> Any other approach to standing in the context of suits to enforce compliance with NEPA for [proposals] not yet resulting in injury to discrete economic, aesthetic or environmental interests would insulate administrative action from judicial review, prevent the public interest from being protected through the judicial process, and frustrate the policies Congress expressed in NEPA, a result clearly inconsistent with the Supreme Court's approach to standing.

*Id.* Cf. *Jones v. District of Columbia Redevelopment Land Agency,* 499 F.2d at 512. In other words, NEPA creates "a statutory right or entitlement" to environmental information, and the alleged deprivation of such information clearly confers on plaintiffs "standing to sue even where the plaintiff[s] would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin,* 422 U.S. at 514, 95 S.Ct. at 2213.

■ Finally, the Court concludes that this case is justiciable in that the Court is capable of molding "effective relief for resolving this case." *Powell v. McCormack,* 395 U.S. 486, 517, 89 S.Ct. 1944, 1962, 23 L.Ed.2d 491 (1969). Plaintiffs herein seek a declaratory judgment as to the adequacy of the final EIS. As the *Powell* Court made clear,

> The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a district court may "declare the rights * * * of any interested party * * * whether or not further relief is or could be sought." . . . [A] request for declaratory relief may be considered independently of whether other forms of relief are appropriate.

395 U.S. at 517–18, 89 S.Ct. at 1962 (citations omitted). Thus, there can be no doubt that this Court has the power to issue a declaratory judgment as to the adequacy of the final EIS here in question. There can also be no doubt that such a declaratory judgment would provide effective relief to the plaintiffs. While most cases challenging the absence or the adequacy of EIS's have sought both declaratory and injunctive relief, the Court of Appeals, for this Circuit has at least twice affirmed that declaratory relief alone is sufficient to enforce NEPA's EIS requirement. *See Scientists' Institute for Public Information, Inc. v. AEC,* 481 F.2d at 1082 n. 1; *Jones v. District of Columbia Redevelopment Land Agency,* 499 F.2d at 512. Certainly the Court can assume that if it determines that the final EIS here in issue is inadequate, then the defendants would correct the deficiencies in the EIS "without the coercion of a court order." *Dunlop v. Bachowski,* 421 U.S. at 576, 95 S.Ct. at 1862. *See also National Treasury Employees Union v. Nixon,* 160 U.S.App.D.C. 321, 492 F.2d 587, 616 (1974).

## V. *Conclusion*

For the reasons stated therein, the Court concludes that the preliminary injunction entered on September 6, 1974 should be dissolved at this time, without prejudice to a renewed request by plaintiffs for the same or similar relief in the future when and if such relief becomes appropriate. The Court further concludes that NEPA requires the Corps of Engineers to submit to Congress with its proposal for legislation authorizing construction on the proposed Lock and Dam 26 a final EIS that complies with the requirements of section 102(2)(C). The Court further concludes that plaintiffs have a right of action and standing to en-

force this EIS requirement. Finally, the Court concludes that plaintiffs' claim for a declaratory judgment renders the case justiciable. Accordingly, the Court will deny the motions to dismiss and order the defendants and defendant-intervenors to respond to plaintiffs' pending motion for summary judgment.

An Order in accordance with the foregoing will be issued of even date herewith.