**COLORADO ENVIRONMENTAL CO-ALITION, a non-profit Colorado corporation; Southern Utah Wilderness Alliance, a non-profit Utah corporation; and the Wilderness Society, a non-profit District of Columbia corporation, Plaintiffs,**

v.

**Manuel LUJAN, Jr., Secretary of the Interior, Defendant.**

Civ. A. No. 91–S–1815.

United States District Court, D. Colorado.

Sept. 14, 1992.

Lori Potter, Andrew Caputo, Sierra Club Legal Defense Fund, Denver, Colo., for plaintiffs.

Anthony Hoang, U.S. Dept. of Justice, Environment & Natural Resources, General Litigation Section, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER comes before the court on the Defendant's Motion to Limit Review to the Administrative Record, filed April 30, 1992, and the Defendant's Motion for Judgment on the Pleadings, filed May 18, 1992. The court has reviewed the Defendant's motions and supplements, the Plaintiffs' responses, the Defendant's reply, the entire case file, the arguments of counsel made in open court at the hearing on June 26, 1992, and the applicable law and is fully advised in the premises.

### A. Defendant's Motion for Judgment on the Pleadings

Plaintiffs seek declaratory and injunctive relief, pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 to 706 (the APA), that Defendant has violated the National Environmental Policy Act (NEPA) by failing to issue the 1991 "dollar-value assessment" as a Supplemental Environmental Impact Statement (SEIS) and requiring Defendant to issue such SEIS.

Defendant argues that he is entitled to judgment on the pleadings because: (1) the Plaintiffs lack standing to bring and maintain this action; (2) this case is not ripe for adjudication; (3) even if the case were ripe, the President's actions are not subject to judicial review under NEPA; and (4) granting the relief sought would violate the doctrine of separation of powers.

### 1. Standard of Review for Judgment on the Pleadings

A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is treated as a motion to dismiss under Fed. R.Civ.P. 12(b)(6). *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 528–29 (10th Cir.1992); *Bishop v. Federal Intermediate Credit Bank of Wichita,* 908 F.2d 658, 663 (10th Cir.1990). A complaint should be dismissed only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief and the court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Mock,* 971 F.2d at 528–29.

### 2. Standing

Article III of the Constitution limits the judicial power of federal courts to the resolution of "cases" and "controversies," and one of the requirements of a "case" or "controversy" is that the plaintiff have "standing" to challenge the action sought to be adjudicated in the lawsuit. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982). The "irreducible constitutional minimum of standing" contains three elements, *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The party invoking federal jurisdiction bears the burden of establishing these elements. *Defenders of Wildlife,* —— U.S. at ——, 112 S.Ct. at 2136, *citing FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990). First, the plaintiff must have suffered an "injury-in-fact," or an invasion of a legally protected interest which is both "concrete and particularized" and "actual or imminent." Second, there must be a causal connection between the injury and the conduct complained of, that is, the injury must be fairly traceable to the challenged action of the defendant. Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Defenders of Wildlife,* —— U.S. at ——, 112 S.Ct. at 2136.

To establish "injury in fact," the plaintiff must show "a distinct and palpable injury to itself. *State ex rel. Sullivan v. Lujan,* 969 F.2d 877, 880 (10th Cir.1992), *citing Glover River Organization v. United States Dept. of Interior,* 675 F.2d 251, 254 (10th Cir.1982). An abstract injury is

not enough—the injury must be both real and immediate. *State ex rel. Sullivan v. Lujan,* 969 F.2d at 881. Although an asserted right to have the Government act in accordance with law is not alone sufficient to confer jurisdiction on a federal court, courts generally will find injury in fact if the plaintiff can demonstrate a plausible benefit. *Id.* at 880–81, *citing Allen v. Wright,* 468 U.S. 737, 754, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984) and *Watt v. Energy Action Education Foundation,* 454 U.S. 151, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981).

To satisfy the "redressability" prong of the standing test, the plaintiff must demonstrate that a substantial likelihood exists that the relief requested will redress the injury claimed. *State ex rel. Sullivan v. Lujan,* 969 F.2d at 881, *citing Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 75 n. 20, 98 S.Ct. 2620, 2631 n. 20, 57 L.Ed.2d 595 (1978) and *Glover River,* 675 F.2d at 254.

Standing jurisprudence is a highly case-specific endeavor, turning on the precise allegations of the parties seeking relief, *State ex rel. Sullivan v. Lujan,* 969 F.2d at 881, *citing National Wildlife Federation v. Hodel,* 839 F.2d 694, 703–04 (D.C.Cir.1988), and each of the three standing elements blends into the others. *Ash Creek Mining Co. v. Lujan,* 969 F.2d 868, 875, (10th Cir.1992), *citing* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3531.4 at 418 (2d ed. 1984).

■ *a.* The Defendant argues that the Plaintiffs cannot demonstrate that they have suffered an "injury-in-fact" or an invasion of a legally protected interest which is both "concrete and particularized" and "actual or imminent." The court disagrees.

*i.* Plaintiffs are environmental and conservation organizations dedicated to wilderness preservation in Colorado, Utah, and Nevada. Although the Plaintiffs/Respondents' affidavits in *Defenders of Wildlife,* — U.S. at ——, 112 S.Ct. at 2138, were found to be insufficient to support a finding of the "actual or imminent" injury required, the affidavits in this case are suffi-

cient. James Gehres is a long-standing, frequent and active user of two of the areas in dispute. His affidavit establishes real and immediate injury and a plausible benefit. *See State ex rel. Sullivan v. Lujan, 969* F.2d at 880–81.

*ii.* In addition, Plaintiffs submit that they have suffered "informational injury" due to the Secretary's failure to issue the 1991 "dollar-value assessment" as a SEIS as required by NEPA. Injury to "informational interests" has been held to support standing. *Public Citizen v. United States Dept. of Justice,* 491 U.S. 440, 448–50, 109 S.Ct. 2558, 2563–64, 105 L.Ed.2d 377 (1989); *Atchison, Topeka and Santa Fe Railway Co. v. Callaway,* 431 F.Supp. 722, 730 (D.D.C.1977). In *Foundation on Economic Trends v. Lyng,* 943 F.2d 79, 84–84 (D.C.Cir.1991), the issue of standing based on "informational injury" was not reached, although the court stated that an organization's standing has never been sustained *solely* on the basis of "informational injury."

Plaintiffs must establish that the injury complained of falls within the zone of interests sought to be protected by the statutory provision whose violation forms the basis of the complaint. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990). NEPA is a procedural statute mandating that decision-makers take environmental factors into account. The Plaintiffs present several affidavits indicating that the functions of their organizations have been adversely affected by the deprivation of information caused by the alleged violation of NEPA. The court finds that the Plaintiffs' alleged injury falls within the zone of interests sought to be protected by NEPA and that the Plaintiffs have standing based on this alleged injury in combination with their other alleged injuries.

*iii.* Finally, Plaintiffs assert that they have standing because they have suffered a "procedural injury" from the Secretary's failure to issue the 1991 dollar-value assessment as a SEIS pursuant to the Congressional mandate of NEPA. Defendant argues that such procedural injury does not

confer standing, citing *Defenders of Wildlife,* —— U.S. at ——, 112 S.Ct. at 2130. The court disagrees.

NEPA is a procedural statute requiring a supplement to either draft or final environmental impact statements be prepared if:

(i) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or

(ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action and its impacts.

40 C.F.R. § 1502.9 (1991). First, some classes of procedural duties are so enmeshed with the prevention of a substantive, concrete harm that a plaintiff may be able to demonstrate a sufficient likelihood of injury just through the breach of that procedural duty. *Defenders of Wildlife,* —— U.S. at ——, 112 S.Ct. at 2160 (Blackmun, J., dissenting). Although NEPA itself does not mandate particular results and simply prescribes the necessary process, these procedures are almost certain to affect the agency's substantive decision. *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 350, 109 S.Ct. 1835, 1846, 104 L.Ed.2d 351 (1989). If the Secretary's recommendations to the President are based on a violation of the process required by NEPA, then the agency's substantive decision has been affected by the violation of a procedural process mandated by Congress. The courts owe substantial deference to Congress' substantive purpose in imposing a certain procedural requirement, *Defenders of Wildlife,* —— U.S. at ——, 112 S.Ct. at 2160 (Blackmun, J., dissenting), such as NEPA's requirement for a supplemental environmental impact statement under certain circumstances.

Second, in *Defenders of Wildlife,* —— U.S. at ——, 112 S.Ct. at 2142, Justice Scalia specifically stated that it was "not a case where plaintiffs are seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs (e.g., the procedural requirement for a hearing prior to denial of their license application, *or the procedural requirement for an environmental impact statement* before a federal facility is constructed next door to them)." (Emphasis added). An individual can enforce procedural rights, so long as the procedures in question are designed to protect some threatened concrete interest of his or hers that is the ultimate basis of his or her standing. *Defenders of Wildlife,* —— U.S. at —— n. 8, 112 S.Ct. at 2143 n. 8. This court finds that the instant action *is* "a case where plaintiffs are seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs." Thus, Plaintiffs have standing for their alleged procedural injury.

*b.* The Defendant also argues that any injury to the Plaintiffs is neither traceable to the Secretary's recommendations to the President nor redressable by a favorable decision by this court. Again, the court disagrees.

The injuries alleged by the Plaintiffs are traceable to the Secretary's decision not to subject the 1991 "dollar-value assessment" to the congressionally-mandated NEPA process. The Plaintiffs' alleged "informational" and procedural injuries are directly caused by the failure to disseminate information through the required NEPA process. And, if the wilderness study areas here at issue are not recommended to the President for wilderness protection, they will not proceed to be designated as wilderness areas by Congress. The Secretary's actions and recommendations are an indispensable link in the chain of events by which a wilderness study area can be designated a wilderness area. In this court's opinion, the Secretary's argument that these areas could later be designated wilderness without recommendation by the Secretary or the President is unrealistic and untenable.

The Plaintiffs can also demonstrate that a substantial likelihood exists that the relief requested will redress the injury claimed. *See State ex rel. Sullivan v. Lujan,* 969 F.2d at 881. Although the President and Congress have not yet acted, the Secretary's actions and recommendations constitute an essential step in the process

of wilderness area designation. The injuries alleged by the Plaintiffs are caused by the Secretary's failure to follow the requirements of NEPA and issue the 1991 "dollar-value assessment" as a SEIS. The injuries alleged by the Plaintiffs would be redressed by requiring the Secretary to follow the procedures for a SEIS that are required by NEPA and this court has authority to direct the Secretary to follow those procedures. 5 U.S.C. § 706(1) and (2). The court finds that the Plaintiffs have demonstrated a substantial nexus between the relief requested and the elimination of their injuries. Thus, Plaintiffs have satisfied the "redressability" prong of the standing test.

### 3. Ripeness

■ The purpose of the ripeness doctrine is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). *Abbott Laboratories* established the central purpose of the ripeness doctrine and provided a two-factor test to guide its application: (1) whether the issue is fit for judicial resolution, considering whether the issue is purely legal and whether the agency action was final; and (2) the extent of hardship to the parties of withholding judicial consideration, considering the direct impact on the day-to-day activities of the parties challenging the agency action. *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir.1990). Later cases have amplified *Abbott Laboratories*, guiding the court in its application of the two factors and cautioning against a rigid or mechanical application of a flexible, often context-specific doctrine. *Yeutter*, 911 F.2d at 1417 (citations omitted).

■ The issue in this civil action, whether the Secretary has violated NEPA by failing to issue the 1991 "dollar-value as-

sessment" as a SEIS, is a legal one. Next, the court must consider the finality of the agency action in making its decision not to issue the 1991 "dollar-value assessment" as a SEIS. An administrative decision is final when it is definitive rather than tentative, when it has a direct and immediate effect on the day-to-day business of the parties, and when it has the status of law and requires immediate compliance. *Abbott Laboratories v. Gardner*, 387 U.S. at 151–52, 87 S.Ct. at 1516–17.

In *FTC v. Standard Oil Co.*, 449 U.S. 232, 239–40, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980), the Court held that an administrative complaint filed by the FTC was not definitive final agency action. In *Lujan v. NWF*, 497 U.S. 871, 890, 110 S.Ct. 3177, 3189, the Court held that the Department of the Interior's "land withdrawal review program," which involved hundreds of continuing decisions reclassifying federal lands, did not constitute "agency action," much less "final agency action." The Secretary's decision in the case at bar can be distinguished because it has already had a direct and immediate effect on the day-to-day business of the parties, as demonstrated by the Plaintiffs' affidavits. Here, the Plaintiffs have directed their attack against a particular agency action that has caused them harm. And, unlike *Lujan v. NWF*, 497 U.S. at 871, 110 S.Ct. at 3177, the Secretary has reached an irreversible decision. Once the recommendations are sent to the President based on inadequate procedures in violation of NEPA, there will be no opportunity for any other recommendation by the Secretary as to the wilderness study areas in question. Therefore, the court concludes that the question presented is legal in nature and that the challenged agency action is final.

The court next applies the second factor of the *Abbott Laboratories* test, which turns on the hardship to the parties of withholding judicial consideration. The court concludes that delaying consideration until the President has made his recommendations to Congress and Congress has decided which areas should have wilderness protection would impose substantial hardship on the parties. The Plaintiff will nev-

er again have a chance to enforce these procedural requirements of NEPA against the Secretary, for this issue will not return to the Secretary, but will proceed on to the President and Congress. Once the harm is done to the Plaintiffs by the Secretary's alleged violation of NEPA, the Plaintiffs cannot return to this point in the process. The Secretary's actions and recommendations are an essential step in the process of wilderness area designation. The second factor in the test having been met, the court concludes that this matter is ripe for judicial resolution.

4. Application of the APA to the President's Actions

■ The President is not a "federal agency" for the purposes of judicial review under the APA. *Armstrong v. Bush*, 924 F.2d 282, 288 (D.C.Cir.1991); 40 C.F.R. § 1508.12. Defendant argues that there is no final agency action in this case until the President makes and transmits his recommendations for wilderness designation to Congress, therefore, the action complained of is not reviewable under the APA, citing *Franklin v. Massachusetts*, — U.S. —, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992). The court disagrees.

The Plaintiffs here seek no relief from the President. The challenged action is the Secretary's decision not to prepare a SEIS pursuant to NEPA after considering significant new circumstances or information (in the form of the dollar-value assessment) and making substantial changes in the proposed action (removing five wilderness study areas from his wilderness recommendations). The court concludes that the Secretary's decision not to prepare a SEIS pursuant to NEPA is final agency action subject to review under the APA.

5. Separation of Powers

■ For the reasons stated above, the court concludes that the requested relief does not interfere with the legitimate interaction between the executive and legislative branches of government and poses no threat to the doctrine of separation of powers. The requested remedy directed at the Secretary can be granted without intruding upon the provinces of the executive and legislative branches of government. Just as Congress does not violate separation of powers by structuring the procedural manner in which the executive branch shall carry out the laws, surely the federal courts do not violate separation of powers when, at the very instruction and command of Congress, they enforce these procedures. *Defenders of Wildlife*, — U.S. at —, 112 S.Ct. at 2159 (Blackmun, J., dissenting).

*B. Defendant's Motion to Limit Review to the Administrative Record*

Plaintiffs seek to present evidence outside the administrative record that is before the court. Plaintiffs seek to introduce testimony from a geological expert to explain the technical terms and complex subject matter of the document known as the "dollar-value assessment." This dollar-value assessment used a computer model to attach dollar values to mineral deposits alleged to be present in the five wilderness study areas at issue in this case. Based on the dollar-value assessment, the Secretary dropped the five wilderness study areas from recommendation to the President for designation as wilderness. The Secretary argues that judicial review in this case is confined to the administrative record.

■ Without substituting its judgment for that of the agency, a reviewing court may go outside the administrative record for certain limited purposes, such as: (1) where the administrative record fails to disclose the factors considered by the agency; (2) where necessary for background information or for determining whether the agency considered all relevant factors including evidence contrary to the agency's position; and (3) where necessary to explain technical terms or complex subject matter involved in the action. *Franklin Savings Ass'n. v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1137 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1991). Here, the court concludes that the proposed testimony is necessary both for determining

whether the agency considered all relevant factors and to explain technical terms or complex subject matter involved in the action. *See Citizens for Environmental Quality v. United States*, 731 F.Supp. 970, 982–83 (D.Colo.1989).

Accordingly, IT IS ORDERED

1. The Defendant's Motion to Limit Review to the Administrative Record is DENIED.

2. The Defendant's Motion for Judgment on the Pleadings is DENIED.